IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

DAVID S. BENNETT,                  )
                                   )
          Plaintiff,               )
v.                                 )    CIVIL ACTION NO. 1:05-250
                                   )
FAIRFAX COUNTY, VIRGINIA,          )
                                   )
          Defendant.               )

**MEMORANDUM ORDER**

THIS MATTER is before the Court on Defendant Fairfax County, Virginia's ("Fairfax County") Motion for Judgment as a Matter of Law, under FED. R. CIV. P. 50(b); Motion for a New Trial, under FED. R. CIV. P. 59; and Motion to Alter or Amend the Judgment, under FED. R. CIV. P. 59(e).  This case concerns the claim of a Caucasian Fairfax County employee, David Bennett, that county administrators discriminated against him when an African American employee was promoted over him for a job vacancy for which he applied.  After a one week jury trial, the jury returned a verdict in favor of Mr. Bennett and against Fairfax County.  The jury found that Mr. Bennett was denied the promotion because of his race and awarded Mr. Bennett a verdict of $540,000.00.  The issues before the Court are:

(1) whether the Court should grant Defendant's Motion for Judgment as a Matter of Law because, at trial, Plaintiff failed to adduce any evidence of discrimination and the jury was called

to speculate that the articulated legitimate non-discriminatory reasons given by Defendant were pretexts for race discrimination.

(2) whether the Court should grant Defendant's Motion for a New Trial because Plaintiff's award of $540,000.00 was excessive and was the result of passion and prejudice by the jury.

(3) whether the Court should remit Plaintiff's award of $540,000.00 to the $300,000.00 statutory cap on damages, under Title VII.

(4) whether the Court should substantially remit Mr. Bennett's award because, based on the evidence adduced at trial, the jury's award of $540,000.00 is excessive and inconsistent with similarly situated federal cases.

The Court denies Defendant's Motion for Judgment as a Matter of Law because the Court finds that there was evidence adduced at trial on which a reasonable jury could return a verdict in favor of Mr. Bennett. The Court denies Defendant's Motion for New Trial because although the verdict was excessive, there is no evidence that it was the result of passion or prejudice by the jury. Even if the jury verdict was not excessive, the Court remits the jury award from $540,000.00 because the Court finds, and Plaintiff concedes, that the statutory maximum amount he can

2

recover for compensatory damages for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses under Title VII is $300,000.00.  Additionally, the Court remits the jury award to $50,000.00 because the jury's award is inconsistent with similarly situated federal cases and is not proportional to the actual injury incurred by Mr. Bennett.

## I. BACKGROUND

This case concerns the claim of a Caucasian Fairfax County employee, David Bennett, that county administrators discriminated against him when an African American employee was promoted over him to fill a job vacancy for which he applied.  In denying Defendant's Motion for Summary Judgment before trial, the Court identified a list of evidence that it believed a reasonable jury could use to infer that Fairfax County's articulated legitimate non-discriminatory reasons for not promoting Mr. Bennett were a pretext for race discrimination.  (*See* Court Mem. Order dated Nov. 28, 2005, Docket No. 31.)  Mr. Bennett testified at trial that he was humiliated by not receiving the promotion (Bennett Trial Tr. Nov. 28, 2005, afternoon session ("Bennett Tr."), at 77); because of his humiliation he had to leave the Housing Department (*Id.*); he reapplied for a position in the Housing Department in late November, 2004 (*Id.* at 68); and that he suffered chronic headaches, insomnia, and irritable stomach problems, from which he still suffers occasionally.  Most

3

notably, Mr. Bennett testified that he did not seek medical treatment for any of these conditions.

The jury returned a verdict in favor of Mr. Bennett and against Fairfax County and awarded Mr. Bennett a verdict of $540,000.00.


## II. DISCUSSION

### A.   Standard of Review

Judgment as a Matter of Law

Federal Rule of Civil Procedure 50(b) allows parties to renew a motion for judgment after trial, or in the alternative, to seek a motion for a new trial.  FED. R. CIV. P. 50(b).  The moving party must first make a motion for judgment as a matter of law prior to the case being submitted to the jury. *See* FED. R. CIV. P. 50(a)-(b).  The Court must enter judgment as a matter of law if "a reasonable jury could reach only one conclusion based on the evidence or if the verdict in favor of the non-moving party would necessarily be based upon speculation and conjecture . . . ." *Myrick v. Prime Ins. Syndicate, Inc.*, 395 F.3d 485, 489 (4th Cir. 2005) (citing *Crinkley v. Holiday Inns, Inc.,* 844 F.2d 156, 160 (4th Cir. 1988)).  If, however, the evidence is susceptible to more than one "reasonable inference, a jury issue is created and a motion for judgment as a matter of law should be denied." *See Myrick,* 395 F.3d at 490 (citing *Hofherr v. Dart Indus. Inc.,* 853 F.2d 259, 261-62 (4th Cir. 1988)).  The jury

4

verdict must stand "[i]f there is evidence on which a reasonable jury could return a verdict in favor of the nonmoving party." *Lovell v. BBNT Solutions, LLC*, 295 F. Supp. 2d 611, 617-18 (E.D. Va. 2003).  In making this determination, the Court must review the evidence in the light most favorable to the non-moving party. *See Myrick*, 395 F.3d at 490 (citing *Hofherr,* 853 F.2d at 261-62). The district court may not substitute its judgment for that of the jury or make credibility determinations.  *Price v. City of Charlotte, N.C.*, 93 F.3d 1241, 1249-50 (4th Cir. 1996).  While the district court is compelled to accord the utmost respect to jury verdicts and tread gingerly in reviewing them, the court will not rubber stamp the conclusions of the jury, but rather has a duty to reverse the jury verdict if the evidence cannot support it.  *Id*.

Motion for New Trial

The standard governing motions for a new trial pursuant to Federal Rule of Civil Procedure 59 is significantly different from that governing motions for judgment as a matter of law. *Lovell*, 295 F. Supp. 2d at 618.  On a Rule 59 motion, a district court may set aside the jury's verdict and grant a new trial only if "(1) the verdict is against the clear weight of the evidence, or (2) is based upon evidence which is false, or (3) will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." *Id.*

(citing *Atlas Food Sys. & Servs., Inc. v. Crane Nat'l Vendors, Inc.,* 99 F.3d 587, 594 (4th Cir. 1996)). On a motion for a new trial addressing compensatory damages, the trial court must weigh the evidence and consider the credibility of the witnesses to determine whether the verdict was against the clear weight of the evidence or was based upon evidence that was false. *Knussman v. Maryland,* 272 F.3d 625, 647 (4th Cir. 2001). If the trial court weighs the evidence and determines that it is deficient to sustain a verdict, then the trial court can set aside the verdict and grant a new trial. *Id.* The grant or denial of a motion for a new trial is entrusted to the sound discretion of the district court and will be reversed on appeal only upon a showing of abuse of discretion. *Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 305 (4th Cir. 1998).

Remittitur

If a court concludes that a verdict is excessive, "it is the court's duty to require a remittitur or order a new trial." *Cline*, 144 F.3d at 305 (internal citations omitted). There is no specific provision for remittitur under the Federal Rules of Civil Procedure, but it is well established that a remittitur should be ordered when a jury award will result in a miscarriage of justice. *Id.; see also Robles v. Prince George's County, Maryland*, 302 F.3d 262, 272 (4th Cir. 2002); *G.M. Garrett Realty, Inc. v. Century 21 Real Estate Corp.*, 17 F.App'x. 169, 172-73

(4th Cir. 2001).  Under the practice of remittitur, "the trial court orders a new trial unless the plaintiff accepts a reduction in an excessive jury award." *Cline*, 144 F.3d at 305.  The decision as to whether damages are excessive is "entrusted to the sound discretion of the district court." *Robles*, 302 F.3d at 271.

**B. Analysis**

    <u>1.  Judgment as a Matter of Law</u>

The Court denies Defendant's Motion for Judgment as a Matter of Law because the Court finds that there was evidence adduced at trial on which a reasonable jury could return a verdict in favor of Mr. Bennett.  The Court must enter judgment as a matter of law if "a reasonable jury could reach only one conclusion based on the evidence or if the verdict in favor of the non-moving party would necessarily be based upon speculation and conjecture . . . ." *Myrick,* 395 F.3d at 489. (citing *Crinkley,* 844 F.2d at 160).  If, however, the evidence is susceptible to more than one "reasonable inference, a jury issue is created and a motion for judgment as a matter of law should be denied." *See Myrick,* 395 F.3d at 490 (citing *Hofherr,* 853 F.2d at 261-62).  The jury verdict must stand "[i]f there is evidence on which a reasonable jury could return a verdict in favor of the nonmoving party." *Lovell* 295 F. Supp. 2d  at 617.

In its Motion for Judgment as a Matter of Law, Defendant argues that, even if Mr. Bennett made out a prima facie case of race discrimination, his own evidence at trial revealed a number of legitimate non-discriminatory reasons for Mr. Bennett's non-promotion.  (Def.'s Mem. in Supp. of Mot. for J. as a Matter of Law ("Def.'s Br."), at 2.)[1]

However, the Court finds that based on the totality of the evidence adduced at trial, there was evidence on which a reasonable jury could have returned a verdict in favor of Mr. Bennett.  This evidence included some uncertainty surrounding Ms. Spencer-Horsley's, who was chair of the selection committee panel and Mr. Bennett's supervisor, tallying of the interview panel's scores (Armstrong Tr., Nov. 29, 2005, at 63 (testifying that every panelist shared their score sheet except for Ms. Spencer-Horsley)); (Schlener Tr., Dec. 1, 2005, at 111-12 (testifying that Ms. Spencer-Horsley stated that she did not tally her scores until after she spoke with Human Resources and after the panel

---

[1]  Defendants argue those reasons included:

- Ms. Spencer-Horsley's testimony that she told another panelist that she was afraid that she would lose a good employee if Ms. Moorman did not get the position and that Ms. Spencer Horsley's section needed to keep all of its people because of its workload. (Def.'s Br., at 2.)

- Mr. Swanson's testimony that Ms. Moorman demonstrated better knowledge in her interview and had more experience than Mr. Bennett, and that she was a creative thinker, a trait which he valued. (Def.'s Br., at 2.)

- Mr. Bennett's admission that Ms. Spencer-Horsley told him that Ms. Moorman could move into the job quickly without any down time. (Def.'s Br., at 2-3.)

discussion)), testimony that after the interview panel discussion other panelists thought that Mr. Bennett was selected for the promotion (Armstrong Tr., Nov. 29, 2005, at 71; Knippler Tr., Nov. 29, 2005, at 45, 70, and 90; Innani Tr. Nov. 29, 2005, at 5), testimony that Ms. Spencer-Horsley failed to check Ms. Moorman's negative reference (Swanson Tr., Nov. 30, 2006, at 95-96 (stating that one of Ms. Moorman's references expressly recommended that she not be given the job.)), and testimony by Fairfax County employees that Ms. Spencer-Horsley showed favoritism toward African American employees.  (Spencer-Horsley Tr., Dec. 1, 2005, at 63 (admitting that in the two years before the promotion selection, she only hired non-whites); and (Hoffman Tr., Dec. 1, 2005, at 247 (testifying that Ms. Spencer-Horsley did not push her African American subordinates to perform as much as she pushed her white subordinates).)  The Court finds that from this evidence a reasonable jury could have returned a verdict in favor of Mr. Bennett.

However, the crux of Defendant's Motion for Judgment as a Matter of Law argues that, throughout the trial, Plaintiff injected the issue of Fairfax County's Diversity Plan and insinuated to the jury that the Diversity Plan itself supported a finding of discrimination.  (Def.'s Br. in Reply, at 3.)  Fairfax County argues that these statements run afoul of the United States Supreme Court's guidance that employers may consider Diversity Plans without it violating the United States Constitution.  *Johnson v. Transp. Agency*, *Santa Clara County.,*

*Cal.*, 480 U.S. 616, 626 (1987) (announcing that using a diversity plan to fill a position is not unlawful and "that [the] petitioner bears the burden of establishing the invalidity of the . . . [p]lan"); *see also Wygant v. Jackson Bd. of Educ.*, 467 U.S. 267, 277-78 (1986) (holding that the ultimate burden remains with the employee to demonstrate the unconstitutionality of a diversity plan).  "If such a plan is articulated as the basis for the employer's decision, the burden shifts to the plaintiff to prove that the employer's justification is pretextual and the plan is invalid." *Johnson*, 480 U.S. at 626.  Defendant argues that Mr. Bennett did not meet this burden.

The Court distinguishes *Johnson* and *Wygant* from this case because in those cases, the defendants pointed to the Diversity Plan as the justification for their employment decision.  Here, Defendant has failed to point to any portion of the record where Defendant argued that Fairfax County's Diversity Plan was the reason for denying Mr. Bennett the promotion.  Absent such a defense, there was no catalyst to trigger the burden shifting paradigm between parties, as required by *Johnson*.  480 U.S. 626. Furthermore, Plaintiff's comments before the jury regarding the existence of a Diversity Plan were insufficient, by themselves, to support an inference that the jury concluded that the Diversity Plan was partially responsible for Mr. Bennett's non-promotion.

Therefore, the Court denies Defendant's Motion for Judgment as a Matter of Law because the Court finds that there was evidence adduced at trial on which a reasonable jury could return a verdict in favor Mr. Bennett.

### 2. Remittitur to the Statutory Maximum

Even if the jury verdict was not excessive, the Court remits the jury award from $540,000.00 because the Court finds, and Plaintiff concedes, that the statutory maximum amount he can recover is $300,000.00. *See* 42 U.S.C. § 1981a(b)(3)(D)(2000) (stating that compensatory damages "for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses . . . shall not exceed" $300,000.00 "in the case of a respondent who has more than 500 employees in each of 20 or more calendar weeks in the current or preceding calendar year.") Therefore, the Court remits the jury award from $540,000.00.

### 3.  Motion for New Trial or Remittitur

The Court denies Defendant's Motion for New Trial but grants Defendant's Motion for Remittitur because the jury's award was excessive, in that the amount was too large considering there was no evidence that Mr. Bennett received any medical treatment for the injuries he incurred as a result of the non-promotion, and the jury award was inconsistent with similar federal cases.

### a. Denial of Motion for New Trial on Liability and Damages

The Court denies Defendant's Motion for New Trial because although the jury verdict may have been excessive, there is no evidence that it was the result of passion or prejudice by the jury.

On a Rule 59 motion, a district court may set aside the jury's verdict and grant a new trial only if "(1) the verdict is against the clear weight of the evidence, or (2) is based upon evidence which is false, or (3) will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." *Lovell*, 295 F. Supp. 2d at 618 (citing *Atlas Food Sys. & Servs., Inc.*, 99 F.3d at 594). On a motion for a new trial addressing compensatory damages, the trial court must weigh the evidence and consider the credibility of the witnesses to determine whether the verdict was against the clear weight of the evidence or was based upon evidence that was false. *Knussman,* 272 F.3d at 647. Additionally, the Fourth Circuit has held that, to receive a new trial on liability and damages, the jury verdict must be made excessive by "passion and prejudice springing from indulgence, in the jury room, in such feelings, [that] may not be cured by a remittitur, but only a new trial." *Ford Motor Co. v. Mahone*, 205 F.2d 267, 273 (4th Cir. 1952). The grant or denial of a motion for new trial is entrusted to the sound discretion of the district court and will be reversed on appeal only upon a showing

of abuse of discretion.  *Cline*, 144 F.3d at 305.  If a court concludes that a verdict is excessive, "it is the court's duty to require a remittitur or order a new trial."  *Id*. (internal citations omitted).

### i. The Verdict was Excessive.

The Court finds that the jury's award was excessive because the amount was too large considering there was no evidence that Mr. Bennett received any medical treatment for the injuries he incurred as a result of the non-promotion.  In employment discrimination cases involving remittitur, the Fourth Circuit has found that verdicts, where compensatory damages were not supported by medical evidence and that were over $100,000.00, were excessive.[2]  *See Cline,* 144 F.3d at 305-06 (finding a plaintiff's jury award for compensatory damages of $117,500.00 was excessive because there was no evidence that plaintiff's emotional trauma and anxiety persisted over time, that it affected plaintiff's ability to perform his job, or that it required counseling); *Hetzel v. County of Prince William*, 89 F.3d 169 (4th Cir. 1996) (opining that an award of $500,000.00 for

---

[2] The Court notes that medical evidence need not be adduced to support compensatory damages.  The Fourth Circuit has held that "a plaintiff's testimony, standing alone, may support a claim of emotional distress precipitated by a constitutional violation." *Price*, 93 F.3d 1241, 1251; *see also Akouri v. State of Florida Dept. of Transportation*, 408 F.3d 1338, 1345 (11th Cir. 2005) ("Compensatory damages may be inferred from the circumstances as well as proved by the testimony.").

emotional distress, based almost entirely on the plaintiff's own self-serving testimony concerning stress and headaches, was excessive).  The Court notes, however, that compensatory damages for emotional injuries are recoverable under § 1983.  *Knussman*, 272 F.3d at 639; *see also Memphis Cmty. Sch. Dist. v. Stachura,* 477 U.S. 299, 307 (1986) ("[C]ompensatory damages may include not only out-of-pocket loss and other monetary harms, but also such injuries as impairment of reputation . . . personal humiliation, and mental anguish and suffering." (internal quotation marks omitted) (ellipsis in original)).

Here, Mr. Bennett testified at trial that he was humiliated by not receiving the promotion (Bennett Tr., at 77); because of his humiliation he had to leave the Housing Department (*Id.*); he reapplied for a position in the Housing Department in late November, 2004 (*Id.* at 68); and that he suffered chronic headaches, insomnia, and irritable stomach problems, from which he still occasionally suffers.  Most notably, Mr. Bennett testified that he did not seek medical treatment for any of these conditions.[3]  Moreover, the court notes that although Mr.

---

[3]Plaintiff cites this Court's decision in *Gaskins v. BFI Waste Services,* for the proposition that a plaintiff's testimony that he turned to family, friends, and his parish priest instead of seeking psychiatric assistance may support a substantial award of compensatory damages.  2005 WL 1667737, *13-*14 (E.D. Va. 2005).  However, the Court notes that, while an award of compensatory damages may be substantial when based on a plaintiff's testimony, the award must still bear some proportional relationship to the actual injury caused by a defendant's behavior.  In *Gaskins*, the plaintiffs were subject to racial epithets such as "nigger," "zulu warrior," "porch monkey," "porch nigger," "mighty joe young," and "jiggaboo" over the course of several years.  The Court found that this language constituted severe racial harassment, and

Bennett's testimony could support a significant verdict, this testimony does not support a verdict for the highest amount allowed under the statutory maximum.

Therefore, the Court finds that the jury's award was excessive because the amount was too large considering there was no evidence that Mr. Bennett received any medical treatment for the injuries he incurred as a result of the non-promotion.

## ii. No Evidence that the Excessive Verdict was the Result of Prejudice or Passion by the Jury.

The Court finds that although the jury award may be excessive, there is no evidence that it was the result of prejudice or passion by the jury.  The Fourth Circuit has held that while a verdict may be excessive, without additional evidence of passion and prejudice by the jury, an excessive verdict alone is insufficient to require a new trial.  *See Ford*, 205 F.2d at 273 (finding that an excessive verdict coupled with evidence that one of the jurors attempted to send a message to the plaintiff's counsel while the trial was in progress, which was designed to aid him in his conduct of the case, required a

---

its occurrence over several years made it sufficiently pervasive.  *Id*. at *8. As a result, the Court found that plaintiffs were entitled to $300,000.00 each in compensatory damages, the statutory maximum.  *Id*. at *12.  Here, Plaintiffs have failed to show why the injury in this case for non-promotion, like *Gaskin*, rises to a level warranting an award of the statutory maximum. Instead, the Court has fashioned, *infra*, an award amount that is proportional to Mr. Bennett's actual injury.

new trial); *Allred v. Maersk Line, Ltd.,* 826 F. Supp. 965 (1993),
970 (E.D. Va. 1993) *rev'd on other grounds*, 35 F.3d 139 (4th Cir.
1994)(holding that although the jury award of $1,000,000.00 was
excessive, the Court could not order a new trial because there
was no evidence that the verdict was the result of passion or
prejudice); *Great Coastal Express, Inc. v. Int'l Bhd. of
Teamsters, Chauffeurs, Wharehousmen, and Helpers of Am.*, 511 F.2d
839, 846 (4th Cir. 1975) (citing *United Constr. Workers v.
Haislip Banking Co.*, 223 F.2d 872 (4th Cir. 1955), for the
proposition that an excessive verdict based on an improper jury
instruction are grounds for a new trial).

Defendant argues, however, that the "the enormity of the
verdict . . . is evidence [enough] that it was the product of
passion or prejudice" and thus a new trial on liability and
damages is appropriate. (Def.'s Br. in Reply, at 8 (citing
*Minneapolis, St. Paul & Saul Ste. Marie Ry. Co. v. Moquin*, 283
U.S. 520, 521, (1931), and *Ford*, 205 F.2d at 273.))[4]  The Court
refuses to adopt this view because it assumes that all large or
excessive jury verdicts are the result of passion or prejudice,

---

[4] In supporting its "size of the verdict" argument, Defendant notes that
the jury award is almost twice the amount of the statutory maximum allowed for
compensatory damages in this case.  (Def.'s Br. in Reply, at 8.)  The Court
finds this fact is non-determinative of whether the verdict was the product of
passion or prejudice because Defendant has not cited any precedent, or
statements showing that Congress intended the statutory cap be the measure of
what is a reasonable verdict.  Rather, the Court is only aware that the
statutory cap represents the outermost amount that a party can recover.
Therefore, the Court is unwilling to accept the Defendant's inference.

16

and, therefore, would require new trials.  Instead, the Court follows the prevailing view of this Circuit that the sheer size of a jury award does not, by itself, demonstrate that it was the result of passion or prejudice.  *See Ford*, 205 F.2d at 273; *Allred,* 826 F. Supp. at 970; *Great Coastal Express, Inc.* 511 F.2d at 846.  Additionally, the size of the award by itself does not mandate a new trial on damages over remittitur.  *See Datskow v. Teledyne Continental Motors Aircraft Prods.,* 826 F. Supp. 677, 691 (W.D.N.Y. 1993) (agreeing that the size of the verdict by itself should not control whether a new trial is warranted).  The Court acknowledges that this is particularly true given the lack of a palpable objective standard in the Fourth Circuit by which to measure awards for pain, suffering, and emotional distress.

Here, with the exception of its own conclusory statements, Defendant has failed to point to any evidence showing that the jury award was the result of passion or prejudice by the jury. Therefore, without this additional evidence, the excessive verdict alone is insufficient to require a new trial.

### b. Substantial Remittitur of Jury Award

Although the Court denies Defendant's Motion for New Trial, the Court remits the jury award to $50,000.00 because the jury's award is inconsistent with similarly situated federal cases and is not proportional to the actual injury incurred by Mr. Bennett.

17

### i.  Similarly Situated Federal Cases

The Court remits the jury award to $50,000.00 because the jury's award is inconsistent with similarly situated federal cases.  In employment discrimination cases involving remittitur and where compensatory damages were not supported by medical evidence, federal courts have substantially remitted compensatory damages that were not proportional to the actual injury incurred. *See Cline*, 144 F.3d at 305-06 (finding a plaintiff's jury award for compensatory damages of $117,500.00 excessive and remitting the award to $10,000.00 because there was no evidence that plaintiff's emotional trauma and anxiety persisted over time, that it affected plaintiff's ability to perform his job, or that it required counseling); *Myers v. City of Cincinatti*, 14 F.3d 1115, 1119 (6th Cir. 1994) (affirming a compensatory damages award of $25,000.00 because the plaintiff lost ten pounds, suffered from insomnia, and was prescribed medication for stomach problems as a result of being forced to retire early from his job as a fireman); *Wulf v. City of Wichita*, 883 F.2d 842, 875 (10th Cir. 1989) (holding that where a plaintiff and his wife testified as to the plaintiff's emotional distress following his unlawful termination, but no medical evidence was adduced at trial, plaintiff's compensatory damage award was remitted from $250,000.00 to $50,000.000); *Spence v. Bd. of Educ. of the Christina Sch. Dist.*, 806 F.2d 1198, 1200-01 (3d Cir. 1986)

18

(holding that the plaintiff's $22,060.00 award of emotional distress damages was properly remitted to zero because the plaintiff failed to submit sufficient evidence to prove that the emotional injuries actually occurred).

While those cases are helpful, it is the Fourth Circuit's decision in *Hetzel* that is the most instructive to the case at hand because the evidence of actual injury adduced in that case mirrors the evidence adduced at trial here.[5]  In *Hetzel*, the plaintiff testified that she suffered from headaches, stress, and problems with her family life as a result of Prince William County's retaliatory conduct.  She testified that although she had been devastated and humiliated, she had not seen a doctor, therapist, or other professional.  *Hetzel,* 89 F.3d at 171.  The jury awarded the plaintiff $750,000.00 in damages for emotional distress.  Following the verdict, the district court reduced the damages award to $500,000.00.  *Id.* at 170.  On appeal, the Fourth Circuit stated that the "thin evidence of rather limited damages would in-and-of itself entitle her to only a minimal damage award for intangible injuries" and remanded the case back to the district court for a remittitur of the jury award.  *Id.* at 171.  Ultimately, the district court reduced the plaintiff's damages

---

[5]  The Court notes that when pressed to distinguish this case from the facts in *Hetzel* during oral argument, Plaintiff stated that *Hetzel* involved a claim of retaliation, and that this case involves a claim reverse race discrimination.  The Court finds this difference insufficient to explain why the damage award in this case should not be proportional to the actual injury incurred, as explained in *Hetzel*.

award to $15,000.00.  *Hetzel v. County of Prince William*, 1999 WL 623195, Civ. No. 98-1514, **2 (4th Cir. Aug. 17 1999) (unpublished) (stating that "[i]n compliance with [their] order, the district court recalculated Hetzel's damages at [$]15,000 . . . .").  Similarly here, Mr. Bennett testified at trial that he was humiliated by not receiving the promotion (Bennett Tr., at 77); because of his humiliation he had to leave the Housing Department (*Id.*); he reapplied for a position in the Housing Department in late November, 2004 (*Id.* at 68); and that he suffered chronic headaches, insomnia, and irritable stomach problems, from which he still occasionally suffers.  Most notably, Mr. Bennett testified that he did not seek medical treatment for any of these conditions.  Therefore, the Court remits the jury's award because it is inconsistent with similarly situated federal cases, including and notably *Hetzel*.

## ii. Proportionality to the Actual Injury Incurred.

The Court remits the jury award to $50,000.00 because the jury's award is not proportional to the actual injury incurred by Mr. Bennett.  In order to be awarded compensatory damages, "a victim of discrimination must demonstrate an actual loss sought to be satisfied by such damages." 45C AM. JUR. 2d *Job Discrimination* § 2653 (2005) (citing *Memphis Cmty. Sch. Dist.*, 477 U.S. at 310.).  "Proof of an actual loss is required because

compensatory damages are not recoverable based solely on the abstract value of rights guaranteed by a statute, nor can they be presumed from the mere fact of a violation." *Id.* The Fourth Circuit has instructed that "an award of substantial compensatory damages . . . must be proportional to the actual injury incurred . . . . The award must focus on the real injury sustained." *Piver v. Pender County Bd. of Educ.*, 835 F.2d 1076, 1082 (4th Cir. 1987). An award of damages must be supported by competent evidence concerning the injury. *Carey v. Piphus*, 435 U.S. 247, 263-64 n.20 (1978); *see also Stallworth v. Shuler*, 777 F.2d 1431, 1435 (4th Cir. 2005) (stating that "compensable damage may not be presumed but must be proven").

The Court reiterates its concern that district court judges need guidance from the Fourth Circuit regarding what constitutes a jury award that is proportional to the actual injury incurred in cases of employment discrimination. *See Gaskins*, 2005 WL 1667737, *14 (announcing that "[t]o date the Fourth Circuit has been unclear in its employment discrimination jurisprudence on how district courts should weigh evidence and create reasonable damages awards for successful plaintiffs.") Although the Fourth Circuit has ruled on a succession of cases, noted *supra*, where the awards have been too high by pointing to some factors that might be relevant to a court's analysis, the Circuit has failed to enumerate any specific formula to provide the district courts

more guidance.  *Id*.  As a result, the Court is constrained by current caselaw to reach what it believes to be a satisfactory award.  The Court posits that with the number of employment discrimination cases in this jurisdiction, this is an inefficient way to proceed.

Here, Mr. Bennett testified at trial that he was humiliated by not receiving the promotion (Bennett Tr., at 77); because of his humiliation he had to leave the Housing Department (*Id.*); he reapplied for a position in the Housing Department in late November, 2004 (*Id.* at 68); and that he suffered chronic headaches, insomnia, and irritable stomach problems, from which he still occasionally suffers.  Most notably, Mr. Bennett testified that he did not seek medical treatment for any of these conditions.  Additionally, Mr. Bennett requests back pay of approximately $5,000.00, plus interest.  (Pl.'s Br. in Supp. of Mot. for Equitable Relief Including Attorney's Fees and Costs, at 2 (requesting that Plaintiff receive 4,994.80 in back pay, adjusted by a 1.60% pay increase).)

The Court finds that this evidence, coupled with the jury's verdict, supports a finding that Mr. Bennett's actual injury was $50,000.00: $5,000.00(back pay) multiplied by 10 (injuries caused by emotional distress).  *See Pine Ridge Coal Co. v. Local 8377, United Mine Workers of America*, 187 F.3d 415, 421 (4th Cir. 1999) ("Once a party has established the fact of damages, the court may

22

estimate damages based on just and reasonable inferences drawn from the evidence submitted."); *see also Stallworth*, 777 F.2d at 1435 ("Once liability has been found, the district court has a great deal of discretion in deciding the level of damages to be awarded").  The Court finds that $50,000.00 reders just compensation to Mr. Bennett for the losses he actually suffered, which comports with the objective behind compensatory damages.  *See* 22 Am. Jur. 2d. *Damages* § 28 (2005) (pronouncing that "[t]he sole object of compensatory damages is to make the injured party whole for losses actually suffered").  The Court acknowledges that the victim of race discrimination suffers humiliation, attack on self esteem, loss of a sense of personal accomplishment, and diminished enthusiasm for work.  No award of money will sufficiently recompense their feelings, and the law is an imperfect remedy.  The Court has struggled with existing case law to render a judgment that fits within existing precedent.

The Court also notes that $50,000.00 represents the maximum amount that was awarded in similarly situated federal cases involving remittitur cited by either party.  *Wulf v. City of Wichita*, 883 F.2d at 875.

## II.   CONCLUSION

The Court denies Defendant's Motion for Judgment as a Matter of Law because the Court finds that there was evidence adduced at trial on which a reasonable jury could return a verdict in favor of Mr. Bennett.   The Court also denies Defendant's Motion for New Trial because although the verdict was excessive, there is no evidence that it was the result of passion or prejudice by the jury. The Court remits the jury award from $540,000.00 because the Court finds, and Plaintiff concedes, that the statutory maximum amount he can recover for compensatory damages for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses under Title VII is $300,000.00.   Last, the Court remits the jury award to $50,000.00 because the jury's award is inconsistent with similar situated federal cases and is not proportional to the actual injury incurred by Mr. Bennett.

For the foregoing reasons, it is hereby

ORDERED that Defendant Fairfax County's Motion for Judgment as a Matter of Law is DENIED.   It is further

ORDERED that Defendant Fairfax County's Motion for New Trial is DENIED.   It is further

ORDERED that Defendant Fairfax County's Motion to Remit the Jury Award to the Statutory Maximum is GRANTED.

24

ORDERED that Defendant Fairfax County's Motion for Substantial Remittitur is GRANTED and Plaintiff David Bennett's jury award is remitted to $50,000.00.  Plaintiff is directed to accept or reject remittitur within ten (10) days of this order in writing.  If the remittitur is not accepted, the Court will stay the new trial pending appeal.

The Clerk is directed to forward a copy of this Order to counsel of record.

ENTERED this __25_ day of April, 2006.


_____/s/_____
Gerald Bruce Lee
United States District Judge

Alexandria, Virginia
04/25/06

25